IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

| | | |
|---|---|---|
| SOUTHERN TOWERS BTS, LP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.: |
| | ) | |
| CITY OF CLINTON, NORTH | ) | |
| CAROLINA, and CLINTON CITY | ) | |
| COUNCIL | ) | |
| | ) | |
| Defendants. | | |

## COMPLAINT FOR EQUITABLE RELIEF, DECLARATORY JUDGMENT, AND REQUEST FOR EXPEDITED REVIEW

Plaintiff Southern Towers BTS, LP ("Southern Towers" or "Plaintiff"), by and through the undersigned counsel, files this Complaint for Equitable Relief, Declaratory Judgment, and Request for Expedited Review against the City of Clinton, North Carolina (the "City") and the Clinton City Council (the "Council"; together with the City, the "Defendants"), and states as follows:

## I.    INTRODUCTION.

1.    This action arises out of the Defendants' unlawful denial of Southern Towers's application to construct a wireless telecommunications facility on real property located in the City of Clinton, Sampson County, North Carolina.

2.    Southern Towers assists Wireless telecommunications service providers in filling significant gaps in their wireless coverage and capacity so they

can deliver the latest available wireless telecommunications technology to customers of wireless service providers and benefit citizens nationwide by providing improved cellular coverage, capacity, and service quality.

3.    As part of its effort to improve wireless communications in Sampson County, North Carolina (the "County"), Southern Towers submitted a Special Use Application (the "Application") to the City of Clinton Planning and Development Department ("Planning Department") and Council for approval to construct a monopole tower on which Verizon Wireless ("Verizon") would place wireless telecommunications equipment and antennas.

4.    Verizon strives to deliver the latest available wireless telecommunications technology to its customers. As part of these efforts, Verizon seeks to identify and fill significant gaps in wireless coverage and capacity. To fill gaps in coverage and capacity and meet growing demand, Verizon must expand its network by constructing an infrastructure designed and developed by engineering staff and outside professionals.

5.    Verizon's network infrastructure is made up of multiple wireless facilities. Each of the facilities can only serve limited areas because of, *inter alia*, geography and the strength of radio frequency bands. The facilities must be located in the areas where service is needed and within proximity of other Verizon

2

facilities to provide customers with adequate signal strength, services, and a useable wireless telecommunications network.

6. Southern Towers's Application was complete and complied with all applicable requirements contained in the City of Clinton Land Development Ordinance (the "Development Ordinance").

7. Southern Towers's Application also complied with all submittal requirements identified in the Application.

8. Defendants wrongfully denied Southern Towers's Application in violation of applicable federal law.

9. Southern Towers brings this action to require Defendants to permit the building of a new wireless telecommunications tower that will fill a significant gap in cellular phone coverage and capacity in the County.

10. As discussed *infra*, Defendants' denial of Southern Towers's Application violated the Communications Act of 1934, as amended by the Telecommunications Act of 1996, 47 U.S.C. § 332(c)(7) (the "TCA" or "Act"), because it: (1) was not supported by substantial evidence; and (2) effectively prohibits the provision of wireless services in the County.

11. Denial of the Application will prevent the construction of a wireless telecommunications facility in violation of the TCA and the Court should overturn Defendants' wrongful denial.

12.     Accordingly, Southern Towers is entitled to an order directing Defendants to grant Southern Towers's Application to construct a new telecommunications facility at the proposed site, including issuance of permits and approvals necessary from Defendants to construct and operate the wireless telecommunications facility.

13.     Southern Towers requests expedited treatment of this Complaint pursuant to 47 U.S.C. § 332(c)(7)(B)(v) ("The court shall hear and decide such action[s] on an expedited basis.").

## II.     THE PARTIES.

14.     Southern Towers is a Delaware limited partnership with its principal place of business located in Chattanooga, Tennessee. Southern Towers is authorized to transact business in North Carolina.

15.     The City is a local government subdivision established under the laws of the State of North Carolina and is subject to the jurisdiction of this Court.

16.     The Council is responsible for reviewing and approving applications for special use permits for telecommunications towers in the City and is subject to the jurisdiction of this Court

4

## III.    JURISDICTION AND VENUE.

17.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1367, the TCA, 47 U.S.C. § 332(c)(7)(B)(v), and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

18.    Venue is proper in this Court pursuant to 47 U.S.C. § 332(c)(7)(B)(v) and 28 U.S.C. § 1391(b)(2) because the City is located in this judicial district, the Council is an instrumentality of a local government located within this judicial district, the proposed wireless communications tower would be located in this judicial district, and a substantial part of the events or omissions giving rise to this action occurred in this judicial district.

19.    The TCA provides that "[a]ny person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with [the TCA] may, within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction."  47 U.S.C. § 332(c)(7)(B)(v).

20.    The TCA provides that appeals under Section 332(c)(7)(B)(v) are to be heard and adjudicated on an expedited basis.  *BellSouth Mobility Inc. v. Gwinnett County,* 944 F. Supp. 923, 929 (N.D. Ga. 1996) (courts shall act expeditiously in deciding appeals brought under section 332(c)(7)(B)(v)).

21.    Southern Towers has been adversely affected by the denial of the Application to allow construction of Southern Towers's proposed telecommunications facility.

22.    "[T]he TCA "vests the court with sufficient authority to grant . . . mandamus relief if such relief would be warranted under the circumstances." *BellSouth Mobility, supra,* 944 F. Supp. at 929; *Western PCS II Corp. v. Extraterritorial Zoning Auth.,* 957 F. Supp. 1230, 1233 (D. N. Mex. 1997).

## IV.    <u>LEGAL BACKGROUND.</u>

23.    The TCA governs federal, state, and local government regulation of the siting of personal wireless service facilities such as the one at issue in this case. 47 U.S.C. § 332(c)(7)(B).

24.    Congress enacted the TCA as a "pro-competitive, de-regulatory national policy framework designed to accelerate rapidly private sector deployment of advanced telecommunications and information technologies and services to all Americans . . . ."[1]

25.    Congress has declared that there is a need for wireless communication services, including "personal wireless services,"[2] as set forth in the TCA, and the rules, regulations and orders of the Federal Communications Commission ("FCC") promulgated pursuant thereto. In order to foster its pro-competitive, deregulatory

---

[1] The Act, S. Rep. 104-230, at 1 (Feb. 1, 1996) (Conf. Report).
[2] Personal wireless service facilities include "Small Wireless Facilities," as defined by the Federal Communications Commission ("FCC") in 47 C.F.R. § 1.6002(l).

6

national policy, Congress included provisions in the Act that encourage competition by restricting the regulation of the placement of personal wireless service facilities by state and local governments and instrumentalities thereof.

26.   The purpose of the TCA is to "make available, so far as possible, to all the people of the United States . . . a rapid, efficient, Nation-wide, and world-wide wire and radio communications service with adequate facilities at reasonable charges, for the purpose of the national defense, for the purpose of promoting safety of life and property through the use of wire and radio communications . . . ." 47 U.S.C. § 151.

27.   Section 332(c)(7) of the TCA imposes substantive and procedural limitations on state and local governments and instrumentalities thereof to ensure that the Act's pro-competitive goals are not frustrated, and it expressly preempts any action or inaction by state or local governments or their agents that effectively prohibits the provision of wireless services.

28.   The TCA reduces barriers local governments impose to defeat or delay the installation of wireless communications facilities and protects against irrational, unsupported or unsubstantiated decisions by local authorities. *T-Mobile Cent., LLC v. Unified Gov't of Wyandotte Cnty.*, 546 F.3d 1299, 1306 (10th Cir. 2008) (quoting *Sw. Bell Mobile Sys., Inc. v. Todd*, 244 F.3d 51, 57 (1st Cir. 2001)

(abrogated on other grounds by *T-Mobile S., LLC v. County of Roswell, Georgia*, 135 S. Ct. 808 (2015)).

29.     In enacting the TCA, Congress considered the potential conflict between state and local governmental regulation of the placement and aesthetic effects of wireless telecommunications facilities and the national need for rapid deployment of economical and effective wireless services.  The TCA imposes significant restraints on local governmental actions that might limit the provision of wireless telecommunications services, while preserving state and local governmental authority over decisions regarding the "placement, construction, and modification of wireless facilities."  47 U.S.C. § 332(c)(7)(A).

30.     47 U.S.C. § 332(c)(7)(B)(i) of the TCA specifically prohibits state and local governing entities from taking actions that effectively prohibit wireless providers from providing service.

31.     The TCA states, in pertinent part, that state and local government regulation of personal wireless service facilities:

(I)     shall not unreasonably discriminate among providers of functionally equivalent services; and

(II)    shall not prohibit or have the effect of prohibiting the provision of personal wireless services.

47 U.S.C. § 332(c)(7)(B)(i)(I-II).

8

32.     The TCA requires that state and local governing bodies put a denial of a request for a wireless services facility in writing supported by substantial evidence in a written record.

33.     The relevant language provides:

(iii)     Any decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities **shall be in writing and supported by substantial evidence contained in a written record**.

47 U.S.C. § 332(c)(7)(B)(iii) (emphasis added).

34.     An injunction ordering issuance of a permit is an appropriate remedy for violation of the TCA.  *Preferred Sites, LLC v. Troup Cty.*, 296 F.3d 1210, 1222 (11th Cir. 2002).

## V.     <u>FACTS</u>.

### A.     <u>Background</u>.

35.     Southern Towers develops wireless communications facilities to allow wireless carriers to provide commercial mobile radio services, personal and advanced wireless services, and other telecommunications services, as those terms are defined under federal law.

36.     To advance the national policies of the TCA established by 47 U.S.C. § 151 and the Federal Communications Commission, Southern Towers constructs towers and other wireless facilities to allow wireless carriers to create and maintain

networks of sites consisting of antennas and communications equipment designed to send and receive radio signals.

37.    Verizon determined that it has a significant gap in its ability to provide reliable service in the County and specifically in an area near Boykin Bridge Road; the gap includes homes and businesses in the area.

38.    Verizon further determined that there was a need to increase capacity to allow existing sites in the area to operate more reliably and efficiently.

39.    Verizon contracted with Southern Towers to locate and develop sites to fulfill Verizon's goal of improving its network and filling significant gaps in coverage in this area.

40.    Verizon provided Southern Towers with a "search ring" of the geographic area in which Verizon believed a new wireless facility was needed to fill the gaps in its wireless coverage and capacity (the "Search Ring").

41.    Southern          Towers          engaged          the          services          of Colliers Engineering & Design ("Colliers") as a consultant to perform a site selection analysis.

42.    Colliers identified properties in the Search Ring large enough to accommodate the facility and which also meet any local requirements.

43. After a comprehensive investigation of the Search Ring, Colliers found that no technologically feasible towers or tall structures were available for collocation.

44. Colliers reviewed the Development Ordinance to identify the applicable development standards and approval procedures for a wireless telecommunications facility.

45. Colliers investigated suitable properties within the area that were appropriate for constructing a wireless communications facility. An appropriate candidate would have to fill the gap in Verizon's service, be leasable, and be buildable.

46. Colliers identified the property located at W. Elizabeth Street, Clinton, North Carolina 28328 (the "Parent Parcel") as a potential location for the proposed facility.

47. The existing makeup of the Parent Parcel where the proposed tower is to be erected is crop land with some minimal mixed forested area. It is located in an existing Residential/Agricultural District with no housing or dwellings in the immediate vicinity.

48. The owners of the Parent Parcel were willing to and did enter into a lease with Southern Towers to allow development of the proposed facility on the Parent Parcel.

49.    The proposed wireless telecommunications facility would be located within the Parent Parcel and consist of a 60'x60' square lease for the location of the tower and an access road (the "Proposed Site").

50.    The Proposed Site is the only property in the Search Ring that would allow Southern Towers to develop a telecommunications facility that would close the existing gap in coverage and capacity in Verizon's network.

51.    The Proposed Site is critical for Verizon to develop a seamless wireless telecommunications network and to fill a significant gap in coverage and capacity in the area.

52.    Wireless carriers employ radio frequency ("RF") engineers to determine where a new wireless facility is required that employ sophisticated proprietary techniques to conduct propagation studies to identify where sites need to be located.

53.    Southern Towers engaged Fulk & Foster ("F&F") to assist with the Application. F&F communicated with the City Planning Director, Robert Lyle Moore, Jr. ("Moore"), to clarify the applicable requirements, including a special use permit application.

54.    F&F obtained an RF Emissions Compliance Report for the Proposed Site. A true and accurate copy of the RF Emissions Compliance Report is attached hereto as **Exhibit A**.

12

55.    The RF Emissions Compliance Report concluded that the RF exposure in accessible areas near the proposed telecommunications tower will be well below FCC limits for the general public.

56.    Pursuant to Section 3.4.3.F, of the Development Ordinance, wireless telecommunications facilities and towers are permitted within the RA-20 zoning district upon the grant of a special use permit.

57.    Such monopole communications towers can be up to 150 feet tall. *See* Development Ordinance, Section 4.9.6.1.

58.    The Proposed Site is located on property with a RA-20 Raw Land / Agricultural zoning classification.

59.    Pursuant to Section 3.4.3.G of the Development Ordinance, no structure or use shall be erected, constructed, established or maintained Within the Airport Height Overlay (AH-O) District at a height of 50 feet or greater, without initial review and approval of the Federal Aviation Association (FAA).

60.    The proposed tower height complies with AH-O airport Height Overlay District requirements, maintaining an overall height lower than 139.5' to avoid penetrating the Horizontal Surface Zone.

61.    The proposed tower meets the Tower Height Setback from Residential Property Lines requirement of Section 4.9.6.1 of the Development Ordinance.

62.     The proposed location of the tower on the Proposed Site meets the required setback distances to the nearest property lines, closest houses, and the nearest roadway, and meets all standards for the RA-20 zoning district set forth in the Development Ordinance.

63.     The property immediately surrounding the proposed tower is all undeveloped raw land with no existing structures on the parcel.

64.     On or about December 22, 2025, Southern Towers submitted its Application for a Special Use Permit seeking approval to construct a new wireless telecommunication facility on the Proposed Site. True and accurate copies of the Application and associated documents are attached hereto as **Exhibit B**.

65.     Southern Towers proposed to develop and sought approval of a 135-foot-tall wireless monopole telecommunications tower at the Proposed Site. The tower was designed to accommodate antennas for four (4) wireless telecommunications service providers.

66.     The height of the proposed facility was determined to be the minimum height needed to address Verizon's coverage and capacity issues in the area of the Proposed Site.

67.     All supporting documents and maps were included with the Application showing the need for the Proposed Site to provide coverage to

Verizon's wireless network. The Proposed Site is critical to develop a seamless network and to fill a significant gap in coverage and capacity in this area.

68. Pursuant to Section 12.4 of the Development Ordinance, Southern Towers prepared a site plan in accordance with the requirements of Section 12.4 and included it with Southern Towers's Application.

69. Additionally, Southern Towers provided the Defendants with the Federal Aviation Administration's ("FAA") determination that the proposed telecommunications tower at the Proposed Site would not be a hazard to air navigation. A true and accurate copy of the FAA's no hazard determination is attached hereto as **Exhibit C**.

70. Southern Towers complied with every procedure, requirement, and standard required by the Development Ordinance for the sitting of a telecommunications tower on the Proposed Site.

71. Southern Towers was never provided with notice that its Application was incomplete, deficient, or otherwise failed to meet the requirements of the Development Ordinance.

**B.    The January 20, 2026 Planning and Zoning Board Meeting.**

72. On January 20, 2026, the Planning and Zoning Board held a meeting on the Application (the "Planning Board Meeting"). A true and accurate copy of

15

the January 20, 2026 Minutes for the Planning Board Meeting ("Planning Board Minutes") is attached hereto as **Exhibit D**.

73.    At the January 20, 2026 Planning Board Meeting, Planning and Zoning Board staff reviewed the Application and evidence presented to the Planning Board and found that the facts presented during the Planning Board Meeting demonstrated the proposed development, as presented, meets all technical requirements of the Development Ordinance, including:

a.    If completed as proposed, the development would comply with all of the requirements of the Development Ordinance;

b.    The use would not materially endanger the public health or safety;

c.    The use would not substantially injure the value of adjoining or abutting property;

d.    The use would be in harmony with the area in which it is to be located; and

e.    The use would be in general conformity with the Land Development Ordinance, thoroughfare plan, or other plans officially adopted by the Council

74.    Upon motion that the proposed development met all technical requirements of the Clinton Land Development Ordinance, the Planning Board

16

unanimously recommended the Application for approval based on its technical review of the Application. The Planning Board acknowledged the City Council would conduct a public hearing where evidence would be presented and the standards of Section 11.4 Step 6, B.2 of the Development Ordinance considered.

**C.    The February 3, 2026 City Council Hearing.**

75.    On February 3, 2026, the City Council held a hearing on the Application (the "Hearing"). A true and accurate copy of the transcript of the Hearing is attached hereto and incorporated herein as **Exhibit E**.

76.    At the Hearing, Planning Director Moore presented the details of the Application, including that the FAA had determined the proposed tower would present no hazard to air navigation.

77.    Moore reminded the Council of the evidentiary requirements for quasi-judicial hearings in North Carolina and that the Council's decision had to be be based on substantial competent evidence rather than general opinion. *See* Exhibit E, pp. 4-5.

78.    At the Hearing, the Application and evidence presented to the Council established the following:

      a.    The Application met all requirements of the Development Ordinance.

17

b.    There were no towers or other suitable structures in the area on which Verizon could collocate its equipment.

c.    Despite equipment on tower sites around the coverage area, a gap existed and the Proposed Site was needed to close the coverage gap and improve Verizon's network infrastructure.

d.    The Proposed Site was needed to increase the capacity of Verizon's existing network of telecommunications sites in the area.

e.    Southern Towers had evaluated other sites in the area and that the Proposed Site was the only site available that would provide the coverage needed to develop the network and close a significant gap in coverage and capacity.

f.    The proposed tower would be safe, designed in compliance with FCC specifications, and, in the unlikely event of a structural failure, would bend upon itself with a 0' fall radius

79.    Paul Parker appeared on behalf of Southern Towers and testified that the proposed tower does not differ from any other tower, except for its height, and that the height had been reduced to comply with FAA regulations.

80.    Real estate appraiser Michael Berkowitz appeared on behalf of Southern Towers, testified that he had conducted the impact analysis that was

submitted with the Application, and presented evidence that the proposed tower would not have an adverse impact on property values.

81. At the hearing, Council members asked various questions about the proposed facility. Southern Towers's representatives responded to the questions and directed the Council members to the documents and information provided as part of the Application.

82. Southern Towers' substantial evidence supported granting conditional use.

83. No competent evidence was presented in opposition to the Application or to Southern Towers's presentation.

84. Instead, the opposition consisted of speculation and conclusory allegations by non-expert residents.

85. Susan Brewington, a resident from Jefferson Street, located down the road from the Proposed Tower, expressed her personal concerns regarding alleged health effects from RF emissions and speculative concerns of cancer, tumor growth, and DNA change from radiation exposure. Though Ms. Brewington was not an expert witness, she attempted to present expert opinion testimony regarding the health effects from RF exposure. In doing so, Ms. Brewington emphasized that she has been a healthcare worker for over twenty years.

19

86.     Clinton City Attorney Joel Starling, Jr. interrupted Ms. Brewington's statements to remind the Council that, regarding the technical information Ms. Brewington was attempting to testify about, the North Carolina Court of Appeals and North Carolina Supreme Court "have ruled that opinion testimony about certain matters, even in a quasi-judicial hearing, has to be offered with expert testimony." *See* Exhibit E, p. 20. Nevertheless, the Council stated that they would continue to receive Ms. Brewington's testimony with "[w]hatever weight we feel necessary." *See id.*

87.     Clinton resident Shirley Honeycutt expressed her personal concerns regarding the health effects of the Proposed Site. Though a layperson, Ms. Honeycutt emphasized that she spent 39 years in the nursing profession and attempted to present expert opinion testimony that the City's setback requirements are insufficient and that children would be more vulnerable to and absorb more RF radiation from the Proposed Site.

88.     Clinton resident Corey Hall, an admitted non-expert, made speculative and conclusory statements on "microwave syndrome" and other alleged negative health effects from RF exposure. Mr. Hall also speculated that aesthetic and health concerns form the Proposed Site would impact property values.

89.     Clinton resident Denise Rents commented that that her main concern regarding the proposed facility was its alleged health impacts, and that she believed

Ms. Honeycutt to be an expert in the field, and that "we don't want Clinton to become the next Erin Brockovich movie."

90.    None of these individuals provided any competent evidence to substantiate their concerns.

91.    Instead, these comments amounted only to speculation and generalized concerns about health or property values that do not constitute substantial evidence.

92.    The Council asked Southern Towers no follow up questions or for any additional evidence.

93.    The Council unanimously voted to deny the Application without taking any additional evidence and without any debate.

94.    In denying the Application, the Council did not rely on any competent evidence.

95.    As a unified body, the Council did not clearly articulate its reasons for denying the Application.

96.    On February 12, 2026, the Planning Department provided Southern Towers with a letter purporting to document the Council's denial of the Application (the "Written Denial"). A true and accurate copy of the Written Denial is attached hereto as **Exhibit F**.

97.     The Written Denial does not articulate the Council's reasons for the denial.

## VI.     <u>Claims</u>.

98.     There was no evidence supporting denial of the Application much less the required substantial evidence.

99.     Denial of the Application constitutes an effective prohibition of wireless services because Defendants have denied Southern Towers the ability to provide needed improvements to wireless telecommunications networks in the County.  47 U.S.C. § 332(c)(7)(B)(i)(II).

100.    Denial of the Application conflicts with the TCA which is designed to: "(1) promote the safety of life and property; (2) improve the efficiency of spectrum use and reduce the regulatory burden upon spectrum users, based upon sound engineering principles, user operational requirements, and marketplace demands; [and] (3) encourage competition and provide services to the largest feasible number of users . . . ." 47 U.S.C. § 332(a) (1)-(3).

101.    Denial of the Application is contrary to the intent of the TCA, which is "to promote competition and reduce regulation in order to secure lower prices and higher quality services for American telecommunications consumers and encourage the rapid deployment of new telecommunications technologies." TCA, S. 652, 104th Cong. (2nd Sess. 1996).

22

102. The injury caused to Southern Towers by the unsupported and unsubstantiated denial of the Application is continuing and irreparable.

103. The injury cannot be quantified or remedied with monetary damages.

104. The Council had no justification for denying the Application.

105. The public interest, supported by the policies embodied in the TCA, warrants a declaration and equitable relief compelling Defendants to approve the Application.

106. A present and actual controversy exists between Southern Towers and Defendants regarding denial of the Application in violation of the TCA.

107. Southern Towers has been and continues to be adversely effected by denial of the Application.

108. Southern Towers has exhausted all of its administrative remedies.

109. Declaratory and equitable relief is appropriate and necessary to correct the injuries caused by Defendants.

**COUNT ONE**
**Failure to Comply with the**
**Supported by Substantial Evidence Requirement**

110. Southern Towers incorporates by reference the allegations set forth in Paragraphs 1 through 109 above as if set forth fully herein.

111. The TCA states in pertinent part:

(iii)   Any decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless

23

service facilities shall be **in writing** and **supported by substantial evidence** contained in a written record.

47 U.S.C. § 332(c)(7)(B)(iii) (emphasis added).

112. Southern Towers presented substantial evidence in support of the Application,[3] addressed all of the grounds for approval of the Application, and complied with all requirements of the Development Ordinance.

113. Defendants never informed Southern Towers that the Application failed to comply with the requirements of the Development Ordinance.

114. The denial of the Application fails to meet the "supported by substantial evidence contained in a written record" requirement of the TCA because there was no evidence, much less substantial evidence, supporting denial of the Application.

115. No competent evidence was offered in opposition to the Application.

116. Further, generalized concerns are not sufficient and are not substantial evidence justifying denial of the Application.

117. In addition, the Council's denial of the Application violates the TCA's requirements because the Council did not explain the bases for its denial at the time it voted to deny the Application on February 3, 2026.

---

[3] The TCA further directs that courts review only whether a locality's denial is supported by substantial evidence – not whether the application itself is supported by substantial evidence. *See T-Mobile Ne. LLC v. City Council of City of Newport News, Va.*, 674 F.3d 380, 387 (4th Cir. 2012). Lack of evidence supporting an application does not support a denial. *Id.* at 386-87 (rejecting locality's argument that "T-Mobile's lack of evidence amounts to substantial evidence supporting the City's denial").

118.  Southern Towers established – and Defendants cannot credibly dispute – that the Application met all requirements of the Development Ordinance.

119.  Based on the facts alleged, Southern Towers is entitled to a declaratory judgment that (1) Defendants' refusal to grant the Application violates the TCA's supported by substantial evidence in a written record requirement and (2) Southern Towers has satisfied the requirements for a conditional use permit to construct and operate the proposed telecommunications wireless facility at the Proposed Site.

120.  Accordingly, Southern Towers is entitled to an injunction requiring Defendants to issue the requested conditional use permit and any and all other approvals necessary to allow for the construction of the proposed wireless telecommunications facility at the Proposed Site.

WHEREFORE, Plaintiff prays that this Court award the following relief:

a.      Hold an expedited hearing;

b.      Declare that the Defendants violated federal law by denying the Application;

c.      Declare that Defendants are mandated by federal law to approve the Application and issue all permits necessary to allow construction and operation of the proposed telecommunications facility;

25

d.      Enter an order granting the Application and all permits and approvals necessary to allow construction and operation of the proposed telecommunications facility;

e.      Estop Defendants from penalizing or in any way preventing Southern Towers and Verizon from proceeding with construction and operation of the proposed telecommunications facility; and

f.      Such further, other, or different relief as the Court deems appropriate under the circumstances.

**COUNT TWO**
**Unlawful Prohibition of the**
**Provision of Personal Wireless Services**

121.   Southern Towers incorporates by reference the allegations set forth in Paragraphs 1 through 120 above as if set forth fully herein.

122.   The TCA specifically provides, in pertinent part, that state and local government regulation of personal wireless service facilities:

(II)   **shall not prohibit or have the effect of prohibiting** the provision of personal wireless services.

47 U.S.C. § 332(c)(7)(B)(i)(II) (emphasis added).

123.   Placement of a wireless telecommunications facility like the one proposed by the Application is permitted in the RA-20 zoning classification for the Proposed Site.

26

124.   The Application met all requirements of the Development Ordinance for a permit for the construction of the proposed telecommunications facility at the Proposed Site.

125.   Southern Towers complied with all of the requirements necessary for approval of the Application.

126.   The Application was based upon sound engineering principles, user operational requirements, and marketplace demands.

127.   Southern Towers provided substantial evidence of significant gaps in Verizon's service and capacity and the lack of reasonable alternative locations for the proposed wireless telecommunications facility.

128.   Southern Towers also provided substantial evidence that only the Proposed Site would meet Verizon's coverage and capacity requirements.

129.   The Proposed Site is the only viable site that would meet coverage and capacity requirements to resolve the significant gaps in Verizon's coverage and capacity.

130.   An effective prohibition occurs where a local governing body materially inhibits a wireless service provider's ability to engage in any variety of activities related to its provision of wireless services.  Not only when filling a gap

in coverage, but also when densifying a wireless network, improving capacity, or otherwise improving service capabilities.[4]

131. An effective prohibition of services in violation of the TCA may occur where a local government action restricts new services or the improvement of existing services.

132. Defendants' denial of the Application materially inhibits Southern Towers's ability to fill a significant gap in coverage, strengthen Verizon's wireless network, improve capacity, and/or otherwise improve service capabilities.

133. Defendants have restricted new services and/or the improvement of existing services.

134. Denial of the Application failed to reduce the regulatory burden in violation of the TCA.

135. Denial of the Application prevents Southern Towers from constructing a wireless communications tower on the Proposed Site and has the effect of prohibiting the provision of wireless services in the area of the Proposed Site in violation of the TCA.

136. Defendants' denial of the Application is unsubstantiated.

---

[4] *In the Matter of Accelerating Wireless Broadband Deployment by Removing Barriers to Infrastructure Investment Accelerating Wireline Broadband Deployment by Removing Barriers to Infrastructure Investment*, FCC 18-133 (Sept. 26, 2018), available at https://docs.fcc.gov/public/attachments/FCC-18-133A1.pdf.

28

137.    Based on the facts alleged, Southern Towers is entitled to a declaratory judgment that (1) Defendants' refusal to grant the Application constitutes an effective prohibition of the provision of personal wireless services in violation of the TCA, and (2) Southern Towers has satisfied the requirements for conditional use permit and any and all approvals necessary to construct and operate the proposed telecommunications wireless facility at the Proposed Site.

138.    Accordingly, Southern Towers is entitled to an injunction requiring Defendants to issue the requested conditional use permit and any and all other approvals necessary to allow for the construction of the proposed wireless telecommunications facility at the Proposed Site.

WHEREFORE, Plaintiff prays that this Court award the following relief:

a.    Hold an expedited hearing;

b.    Declare that the Defendants violated federal law by denying the Application;

c.    Declare that Defendants are mandated by federal law to approve the Application and issue all permits necessary to allow construction and operation of the proposed telecommunications facility;

d.    Enter an order granting the Application and all permits and approvals necessary to allow construction and operation of the proposed telecommunications facility;

e.     Estop Defendants from penalizing or in any way preventing Southern Towers and Verizon  from proceeding with construction and operation of the proposed telecommunications facility;

f.     Such further, other, or different relief as the Court deems appropriate under the circumstances.

Respectfully submitted this 12th day of March, 2026.

**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C.**

*/s/ Rachel H. Boyd*
Rachel H. Boyd
N.C. State Bar No. 56974
2235 Gateway Access Point, Suite 220
Raleigh, NC  27607
Email: rboyd@bakerdonelson.com
Phone: (984) 844-7930

*Counsel for Plaintiff Southern Towers BTS, LP*